IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JASON LEE MORASCO,[1]                    )
                                          )
              Plaintiff,                  )
                                          )
       vs.                                )     Civil Action No. 21-130
                                          )
Kilolo Kijakazi,[2]                       )
*Acting Commissioner of Social Security*, )
                                          )
              Defendant.                  )

ORDER

AND NOW, this 1st day of February 2022, having considered the parties motions for

summary judgment, the Court will grant Defendant's motion except as to costs.[3]  The agency's

final decision denying Plaintiff's application for supplemental security income ("SSI") under

Title XVI of the Social Security Act ("Act"), 42 U.S.C. § 1381 *et seq.*, is supported by

substantial evidence, therefore, the Court will order it affirmed.  *See* 42 U.S.C. § 405(g); *Biestek*

*v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).[4]

---

[1]      The Court notes that Plaintiff's name is spelled M-A-R-A-S-C-O throughout the record,
*e.g.*, R. 37, "It's Jason Marasco, M-A-R-A-S-C-O."  Plaintiff's most recent filings reflect that
spelling as well.  (Doc. Nos. 11, 15).  Therefore, the Clerk is directed to change the spelling in
the case caption of the docket.

[2]      Kilolo Kijakazi is substituted as Defendant in this matter, replacing former Commissioner
Andrew Saul pursuant to Federal Rule of Civil Procedure 25(d).  This change has no impact on
the case.  42 U.S.C. § 405(g).  The Clerk is directed to amend the docket to reflect this change.

[3]      Defendant asks the Court to tax costs against Plaintiff but does not advance any argument
in support of that request.  Thus, the Court will deny Defendant's motion as to costs.  *See Pa.*
*Dep't of Pub. Welfare v. U.S. Dep't of Health & Hum. Servs.*, 101 F.3d 939, 945 (3d Cir. 1996).

[4]      Plaintiff filed his application for SSI benefits on July 23, 2019 alleging disability onset on
August 30, 2009.  (R. 15).  The application was denied by an Administrative Law Judge ("ALJ")
whose decision became the Commissioner's final decision once the Appeals Council declined to
review it.  20 C.F.R. § 416.1481.  The ALJ premised his denial of the application on his finding
that Plaintiff could work at all exertional levels with non-exertional limitations, and his finding

that a sufficient quantity of unskilled jobs were available in the national economy for an individual of Plaintiff's abilities and vocational characteristics.  (R. 22, 27).  Before the Court, Plaintiff raises several challenges to the ALJ's decision.  He argues that the ALJ's decision is unsupported by substantial evidence because the ALJ failed to consider his history of hospitalizations and how the combination of his medically determinable impairments affected his abilities.  He argues that the ALJ afforded his treating psychiatrist's opinion less weight than it deserved.  He further argues that the ALJ failed to adequately assess his alleged illiteracy which—had it been appropriately considered—would have resulted in a finding of disability.  For the reasons explained below, the Court finds these arguments unpersuasive and will order summary judgment in Defendant's favor, thus affirming the ALJ's decision.

The Court reviews the ALJ's decision to determine whether it is supported by substantial evidence.  *Brown v. Astrue*, 649 F.3d 193, 195 (3d Cir. 2011) (citation omitted).  Pursuant to the substantial evidence standard, the decision must be supported by "such relevant evidence as a reasonable mind might accept as adequate."  *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) (citing *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999)).  The standard is deferential such that a reviewing court may not substitute its own judgment for that of the ALJ merely because the reviewing court "would have decided the factual inquiry differently."  *Id.* (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)).  That said, the standard, while deferential, does not permit conclusory decisions.  *See id.* at 40 n.4.  ALJs' analyses must demonstrate that they "hear[d] and evaluate[d] all relevant evidence in order to determine whether an applicant is entitled to disability benefits."  *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).  Otherwise, reviewing courts have no way to meaningfully review the decision.  *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 119 (3d Cir. 2000).

Plaintiff contends that the ALJ's decision does not permit meaningful review because the ALJ failed to show that he considered Plaintiff's psychiatric hospitalizations in the record at R. 445—55 and 549—55.  The records identified by Plaintiff correspond to two hospital admissions for mental health, one in January 2002 and another in July 2014.  (R. 444, 550).  Notes from the first hospitalization indicate that admission was voluntary, Plaintiff sought help for depression and suicidal thoughts, the duration was two days, and that Plaintiff was medically stable upon discharge.  (R. 445—46).  Notes from the 2014 hospitalization indicate Plaintiff had a psychiatric evaluation without any "acute psychosis/depression" and was stable upon discharge. (R. 552).

Though Plaintiff challenges the ALJ's omission of these hospitalizations from his discussion of the mental-impairment evidence, Plaintiff fails to explain what the ALJ's explicit consideration of these records would have done for his case.  ALJs must be thorough, but they are not required to mention "every relevant treatment note" in their decisions.  *Fargnoli*, 247 F.3d at 42.  In this matter, the ALJ thoroughly considered a significant amount of evidence pertaining to Plaintiff's mental health impairments.  He considered Plaintiff's outpatient treatment records for anxiety and depression, a psychological consultative examination, state agency psychological consultants' assessments, and Plaintiff's treating psychiatrist's opinion. (R. 24—26).  The records of Plaintiff's hospitalizations in 2002 and 2014 do not appear to

provide any information about Plaintiff's mental health impairments beyond the information available in these other records.  Accordingly, the Court discerns no harm in the ALJ's omission of these brief hospitalizations from his discussion of the relevant mental-impairments evidence.

The Court next addresses Plaintiff's argument that the ALJ failed to consider how the combination of Plaintiff's impairments limited his abilities.  ALJs consider the combined effect of a claimant's medically determinable impairments at steps two and four of the five-step sequential evaluation they use to assess disability.  *See* 20 C.F.R. § 416.920(a)(4).  Step two is a threshold determination—claimants must have one severe medically determinable impairment or combination of impairments to move to the next step of the analysis.  *Id.* § 416.920(a)(4)(ii).  At this early step, even one severe impairment or combination thereof is sufficient.  *Id.*; SSR 85-28, 1985 WL 56856, at *3 (S.S.A. Jan. 1, 1985) ("A claim may be denied at step two only if the evidence shows that the individual's impairments, when considered in combination, are not medically severe[.]").  Later in the evaluation, at step four, ALJs must determine claimants' remaining work abilities, that is, their residual functional capacity ("RFC"), so that they can evaluate whether it is possible for claimants to return to past work or adjust to other available work.  *Id.* § 416.920(a)(4)(iv).  At step four, ALJs must assess claimants' maximum work ability, therefore, ALJs are directed to consider "limitations and restrictions" arising from *all* medically determinable impairments—not just the severe ones.  SSR 96-8P, 1996 WL 374184, at *5 (S.S.A. July 2, 1996).

Plaintiff argues that the ALJ failed to consider the combination of his impairments and, instead, "deliberately analyzed [his] impairments separately, solely for the purpose of classifying them as non-severe, in order to deny the claim."  (Doc. No. 12, pg. 5 n.2).  Insofar as the Court might interpret Plaintiff to be challenging the ALJ's step-two determination, the Court finds no harmful error.  Where, as here, an ALJ finds at least one severe medically determinable impairment and proceeds to step three of the evaluation, any failure to identify further severe medically determinable impairments or combinations thereof is harmless.  *Orr v. Comm'r Soc. Sec.*, 805 Fed. Appx. 85, 88 (3d Cir. 2020).

To the extent Plaintiff raises his combination-of-impairments challenge to the ALJ's formulation of the RFC at step four, the Court finds that the ALJ's thoughtful consideration of the evidence toward the RFC determination rebukes that challenge.  The ALJ acknowledged his obligation to consider all of Plaintiff's medically determinable impairments—severe and non-severe—toward the RFC finding: "I considered all of the claimant's medically determinable impairments, including those that are not severe, when assessing the claimant's residual functional capacity."  (R. 19).  Having announced his intent, he followed through, considering symptoms and limitations arising from the non-severe impairments together with those connected to severe impairments.  For example, the ALJ found Plaintiff's hand injury from a gunshot wound was non-severe at step two (R. 18—19) but considered Plaintiff's reported difficulty picking things up with his injured hand (R. 23) and medical opinion evidence concerning Plaintiff's use of his hands (R. 25) at step four.  Thus, the Court is satisfied that the ALJ accounted for the combined effect of Plaintiff's impairments in the RFC determination.  The Court's review of the Commissioner's decisions is more about substance than form and where,

as here, it is clear from the ALJ's decision that he accounted for the combined effect of Plaintiff's impairments and limitations, the Court will not fault the ALJ for failing to use particular language spelling out how the combined effect of Plaintiff's impairments differed from their individual impact. *See Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004). Additionally, insofar as Plaintiff presents the argument the Court has just addressed as a challenge to the ALJ's presentation of Plaintiff's limitations to the vocational expert ("VE"), such an argument is one and the same as the challenge to the RFC and does not warrant further discussion. *Rutherford v. Barnhart*, 399 F.3d 546, 554 n.8 (3d Cir. 2005).

Next, the Court considers Plaintiff's argument that his treating psychiatrist's opinions should have been afforded substantial weight. ALJs must consider every medical opinion they receive but, for applications filed on or after March 27, 2017, they do not "defer or give any specific evidentiary weight, including controlling weight" to them. 20 C.F.R. § 416.920c(a). This is a departure from past practice. For applications filed before March 27, 2017, a treating physician's opinion might have been afforded "controlling weight" if it was "supported by medically acceptable clinical and laboratory diagnostic techniques" and was "not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. § 416.927(c)(2). However, the new rules direct ALJs to consider all medical opinion evidence for "persuasiveness" pursuant to the factors at 20 C.F.R. § 416.920c(c)(1)—(5). "Supportability" at subsection (c)(1) and "[c]onsistency" at subsection (c)(2) are most important. *Id.* § 416.920c(b)(2).

In this matter, the ALJ found the medical assessment provided by Plaintiff's treating psychiatrist—Dr. Thompson—to be "partially persuasive." (R. 26). The ALJ considered that Dr. Thompson believed Plaintiff had a "poor ability" to "behave in [an] emotionally stable manner," "relate predictably in social situations," "demonstrate reliability," "interact with supervisors and coworkers," "maintain attention and concentration," "use judgement," and "handle work stress." (R. 26 (citing Ex. 19F at R. 606—08)). The ALJ found that, to a certain extent, these opinions were not consistent with the body of objective medical evidence in the record. (R. 26). To explain his finding in this regard, the ALJ cited parts of Plaintiff's record that reflected adequate mental functioning, like a 2019 psychological consultative examination where Plaintiff was noted to be "cooperative" with good eye contact and relatability. (R. 26). The ALJ did, however, find Dr. Thompson's assessment to be partially consistent with the record and, thus, persuasive in some regards such as Dr. Thompson's opinion that Plaintiff could follow "simple instructions." (R. 26, 608).

Plaintiff challenges the ALJ's consideration of Dr. Thompson's opinions and argues they should have been afforded "substantial weight" because of his treating relationship to Plaintiff and the longevity of their relationship. (Doc. No. 12, pg. 3 n.1). As an initial matter, Plaintiff mistakenly cites the regulation applicable to applications filed before March 27, 2017 which does not reflect the ALJ's obligations for assessing medical opinion evidence in this case. Pursuant to the new rules for evaluating medical opinion evidence, the ALJ appropriately articulated how persuasive he found Dr. Thompson's assessment and supported his finding with references to various consistencies and inconsistencies among the opinion and objective medical evidence in

4

the record.  (R. 26).  Though Plaintiff argues the ALJ's assessment of the opinion was incomplete because the ALJ failed to address similarities among Dr. Thompson's opinions and the opinion evidence provided by the consultative examiner ("CE"), the Court finds no substantive deficiency of the assessment.

To the contrary, the ALJ's consideration of the opinion evidence—and these two opinions in particular—was quite thorough.  The ALJ explained his consideration of the CE's evaluation not once but twice.  The first time, he recounted the CE's objective medical findings. (R. 24).  The second time, he considered the CE's opinions and found them partially persuasive. (R. 25).  He explained that the CE's opinion that Plaintiff had "moderate limitations" in understanding (*et al.*) and interacting with others was compatible with limitation to simple and routine tasks in the RFC.  (R. 25).  He found the CE's "guarded prognosis" not persuasive due to vagueness.  (R. 25).  The ALJ then brought up the CE's evaluation again in his consideration of Dr. Thompson's opinions; when he explained that not all of Dr. Thompson's opinions were persuasive, the ALJ noted that the CE's evaluation showed Plaintiff was "cooperative" and that "he was able to relate to the examiner."  (R. 26).  Because the ALJ thoughtfully considered both professionals' opinions and, further, clearly considered their relation to each other, the Court finds no shortcoming that would require remand.

In arguing the ALJ overlooked similarities among Dr. Thompson and the CE's opinions, Plaintiff has expressed particular concern that the ALJ ignored their support for each other concerning Plaintiff's alleged illiteracy.  (Doc. No. 12, pg. 3 n.1).  Plaintiff raises several arguments pertaining to illiteracy that the Court will address together.  Plaintiff argues that evidence in the record supported a finding that Plaintiff was illiterate.  He further argues that to the extent the evidence in the record was inconclusive regarding illiteracy, the ALJ should have developed the record on the issue.  He points to the CE's recommendation that Plaintiff would benefit from cognitive testing for support of his position that the ALJ was derelict in his duty to develop a complete record.  He argues that, without a complete record on the issue, the ALJ used the evidence he had to cobble together a lay determination to the effect that Plaintiff was literate. These errors affected the RFC determination which—Plaintiff alleges—did not account for illiteracy, and deprived Plaintiff of a disability determination pursuant to regulations that apply to illiterate persons.

"Illiteracy means the inability to read or write," to the extent that a claimant "cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name."  20 C.F.R. § 416.964(b)(1).  Illiterate claimants usually have "had little or no formal schooling."  *Id.*  The impact of literacy on a claimant's case depends on several other factors.  If a claimant is between forty-five and forty-nine years old, can only perform sedentary work, is "unskilled or [has] no transferable skills," "[has] no past relevant work or can no longer perform past relevant work," *and* is "illiterate," a finding of disability is appropriate.  20 C.F.R. Pt. 404, Subpt. P, App. 2, § 201.00(h)(1).  For claimants under forty-five, illiteracy usually *is not* a significant impediment to finding appropriate work unless they are unable to "perform a full range of sedentary work."  *Id.* § 201.00(h)(1)—(3).

At the outset, the Court notes that the regulations that direct a finding of disability due, in part, to illiteracy specifically carve out individuals like Plaintiff who are younger and capable of working at all exertional levels.  As indicated at Section 201.00(i), an individual who can perform "a full range of sedentary work" and is between eighteen and forty-four years old will have jobs available to them in sufficient number "even if they are illiterate."  Thus, Plaintiff has not persuasively argued that a finding of illiteracy would have affected the outcome in this matter.  Where an alleged error would have had no impact on the outcome of a case, remand is unwarranted.  *Thomas v. Saul*, No. CV 20-612, 2021 WL 3563390, at *1 n.2 (W.D. Pa. Aug. 12, 2021) (citing *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010)) (explaining the application of the harmless error doctrine in social security cases).

To the extent Plaintiff argues the ALJ should have ordered additional cognitive testing pursuant to the CE's recommendation and that his failure to do so led to an RFC determination based on incomplete evidence, the Court finds no further development of the record was necessary in this case.  Given the beneficent nature of the Act, there certainly are instances where it is incumbent on ALJs to seek additional evidence.  ALJs are obligated to develop the record sufficiently that claimants' disability determinations are based on records that are "full and fair." *Ventura v. Shalala*, 55 F.3d 900, 902 (3d Cir. 1995); *Ferguson v. Schweiker*, 765 F.2d 31, 37, 36 n.4 (3d Cir. 1985) (explaining that "if there is insufficient medical documentation or if the medical documentation is unclear, it is incumbent upon the Secretary to secure any additional evidence needed to make a sound determination").  However, when an ALJ has enough evidence to make his decision, he need not needlessly seek more evidence.  *See Sterrett v. Berryhill*, No. CV 17-63-E, 2018 WL 1400383, at *1 n.2 (W.D. Pa. Mar. 20, 2018) (citations omitted).

In this case, it was not error for the ALJ to dismiss the CE's recommendation that Plaintiff "may benefit from further evaluation including cognitive testing to assess for an intellectual disability" (R. 397) and to decide he had sufficient evidence to determine which limitations were appropriate for inclusion in Plaintiff's RFC.  The record in this case was not underdeveloped, as is evident from the ALJ's step-four analysis.  To formulate Plaintiff's RFC, the ALJ considered Plaintiff's testimony (R. 22—23), objective medical evidence (R. 23—24), and medical opinion and prior administrative medical finding evidence, which included: two state agency medical consultants' findings, the state agency psychological consultant's assessment and another consultant's reconsideration; an internal medicine consultative examination; the CE, Dr. Golman's, October 2019 psychological consultative examination; October 2019 methadone progress records from Summit Medical Services; and Dr. Thompson's assessment.  (R. 24—26).  Based on these records, the ALJ determined Plaintiff could perform "simple, routine tasks" involving only one or two steps, make "simple work-related decisions," "ask[] simple questions," and "accept[] instruction," all without needing to make a definitive finding as to Plaintiff's literacy or lack thereof.  With plenty of material to formulate Plaintiff's RFC and no obvious unresolved inconsistencies among the evidence, the ALJ did not err in articulating the RFC based on the existing materials in the record.  *See Ferguson*, 765 F.2d at 37 (explaining it was on the ALJ to "secure additional evidence from another physician" if the

Therefore, IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment (Doc. No. 11) is DENIED and Defendant's Motion for Summary Judgment (Doc. No. 13) is GRANTED in part and DENIED in part, as specified above.

s/ Alan N. Bloch
United States District Judge

ecf:    Counsel of Record

---

existing physician reports in the record "were conclusory or unclear"). For this and the foregoing reasons, the Court will grant summary judgment in Defendant's favor.